IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH DAVID CARTER, I,<br><br>    Plaintiff,<br><br>    v.<br><br>WALT PESTERFIELD and<br>OFFICER AZEEZ,<br><br>    Defendants. | Civil Action No.:  BAH-23-159 |

**MEMORANDUM OPINION**

Self-represented Plaintiff Joseph David Carter, I, filed the above-captioned civil rights complaint alleging poor and dangerous prison conditions, failure to protect from a fire, and retaliation.  ECF 1.  Because the complaint failed to state a claim against any individual defendant, Carter was directed to file an amended complaint.  ECF 8.  Carter was specifically advised to "make clear which individuals he intends to name as defendants, how each was personally involved, and what injury Carter sustained as a result." *Id.* at 3.  Additionally, Carter was advised that "[t]o allege a constitutional violation for failure to safeguard the inmate's health and safety, the [c]omplaint must make plausible that the named officer's acts or omissions exposed the plaintiff to substantial risk of harm and that the officer knew of or recklessly disregarded the substantial risk to inmate health and safety." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)).  Carter did file an amended complaint.  ECF 12.

Sections 1915(e)(2)(B) and 1915A of 28 U.S.C. require this Court to conduct an initial screening of this complaint and dismissal of any complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *see also Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721, 1723 (2020).

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Thompson*, 878 F.3d at 97.

To establish liability, a two-part inquiry that includes both an objective and a subjective component must be satisfied. *See Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*,

511 U.S. at 834.  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn.  *Id.* at 837.  Further, "deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting" one)

Importantly, however, Carter does not clarify whether he was a pretrial detainee, or a convicted individual, at the time the incidents giving rise to his claims occurred.  This distinction is important because "pretrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm."  *Short v. Hartman*, 87 F.4th 593, 604–05 (4th Cir. 2023).  Indeed, "[t]he Fourteenth Amendment Due Process Clause protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'"  *Id.* at 608–09 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)) (citations omitted).  "Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, 'objectively unreasonable,'. . . that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly . . . it is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Short*, 87 F.4th at 611 (citations omitted).  However, "it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee."  *Id.* at 611–12.

3

Taking the facts in the amended complaint in the light most favorable to Carter, the Court will analyze his claim as if he were a pretrial detainee at the time of the incidents in question, as that standard is purely objective, and thus considerably easier to satisfy. However, even utilizing this lower threshold, Carter fails to state a claim. The amended complaint alleges that on July 27, 2022, Carter woke up to "heavy volumes of smoke blowing out of the vent. [He] immediately jumped out of bed and repeatedly pressed the emergency button to signal for help. Officer Azeez blatantly ignored the button." ECF 12, at 3. Carter alleges that he yelled for help, two more officers came onto the tier, and Officer Berry ordered Officer Azeez to open the cell, which he did. *Id.* Carter and the other inmates on the tier were evacuated and placed in holding cells. *Id.* at 3–4. Carter states that he suffered smoke inhalation and chest pains as well as other non-specific physical and psychological problems. *Id.* at 4.

These allegations do not state a claim that Azeez violated Carter's constitutional rights. While Carter alleges that Azeez "blatantly ignored the button" while smoke was entering his cell, he does not allege any facts to support his contention that Azeez's actions were objectively unreasonable or even that he purposefully ignored the button. *Id.* at 3. Carter does not state how much time passed after he pushed the button and before he was removed from his cell and evacuated from the tier. There is no allegation that Azeez saw the smoke or purposefully and unnecessarily failed to respond to the emergency call. In fact, Carter does not explain why he believes Azeez "blatantly ignored" the button, or whether he was even in eyesight of him. Given the facts alleged, Azeez may have been delayed in responding to the call button while he reported the fire or called for backup knowing the entire tier would need to be evacuated. Carter's bald assertion that Azeez "blatantly ignored" the emergency button is not sufficient to state a claim. There is no factual allegation to suggest that Azeez acted in a manner which was objectively

4

unreasonable; as such, the amended complaint fails to state a claim against him.  The claims against Defendant Azeez shall be dismissed.

As to Defendant Walt Pesterfield, the amended complaint makes no specific factual allegations against him.  ECF 12.  Carter alleges that Pesterfield "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take measures to abate it." *Id.* at 2.  However, Carter does not allege what harm Pesterfield knew of or what "measures" he failed to take.  Carter alleges generally that Defendants failed to protect him from a fire, but he does not make any specific allegations that Pesterfield knew about the fire or Carter's exposure to it.[1]

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or

---

[1] Carter also alleges "retaliation from participating in the grievance process," but states no facts regarding that claim.  ECF 12, at 3.  In the absence of any factual support, the claim is dismissed.

tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Here, Carter has alleged no facts showing that Pesterfield personally participated in any constitutional violation, nor do any facts support a claim of supervisory liability.  As such, the amended complaint fails to state a claim against Pesterfield.

As Carter has failed to state a claim against either named Defendant, the complaint and amended complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(B)(ii).

A separate Order follows.


July 31, 2024                                                             /s/
Date                                                              Brendan A. Hurson
                                                                  United States District Judge